My name is Gil Cisan and I represent the appellant Ronnie Whisenton in this case. Mr. Whisenton appeals the district court's decision to adopt the magistrate's report and recommendation, which recommended the denial of his motion to suppress evidence and statements. In this regard, there are two issues, two discreet issues before the court today. The first is whether the search of Mr. Whisenton's residence and the entry into that residence was unlawful and whether it was justified by exigent circumstances. The magistrate concluded that it was not. The government, I anticipate, will argue that it was justified by exigent circumstances. And the second issue, Your Honors, is whether Mr. Whisenton's manifestation of consent to search, given after the unlawful entry had proceeded, was sufficiently removed from the taint of the initial unlawful entry. And we conclude that it's not. The magistrate concluded that it was sufficiently removed. Moving first, Your Honors, to the issue of exigent circumstances. There's only two ways for which law enforcement can enter a home without a warrant. Only two. Consent and exigent circumstances. Now, in the facts of this case, it's interesting to note that law enforcement chose consent as the basis for why they went into the residence in the first place. Specifically, the report that they issued and was given to defense counsel mentioned nothing about exigent circumstances, mentioned nothing about evidence being destroyed, mentioned nothing about suspects fleeing or fleeing in the residence, mentioned nothing at all about the potential dangerousness of the occupants inside. It was only after defense counsel provided the government with surveillance video from the home that the government changed its tune. As a matter of fact, the surveillance video that the defense provided was from the home surveillance camera showed that, in fact, the consent of the entry was not consensual, but in fact that after the door was opened, law enforcement barged in with their guns drawn. And so they were forced, as a matter of fact, to change their tune from consent to exigent circumstances. But first, let's analyze whether or not the magistrate's decision was correct here to conclude that there were not sufficient exigent circumstances. Now, they relied specifically on the cases of Greer, Ball, and Vance, all from the Eighth Circuit. And those cases simply stand for the proposition that there are usually three factors that are looked at when exigent circumstances are found. First, were lives threatened? Second, was the suspect fleeing? And third, was there any evidence being destroyed? None of those facts are present in the incident case. As a matter of fact, the magistrate concluded specifically that when law enforcement arrived at the house to burst into the door, they, number one, noticed no suspicious activity. Number two, they noticed they had the opportunity to look inside the glass door of the front door of the house, yet saw nobody moving around, saw nobody hearing anything about evidence being destroyed, or anything of that sort. More importantly, Your Honors, they actually had that house. They knew that Mr. Wisden was in that house for six hours prior to actually effectuating this, quote, knock and talk that they were going to do. The facts show that around 9 o'clock, the target of the investigation, Adrian Bollinger, had actually arrived at Mr. Wisden's residence. And apparently, Mr. Wisden came out of the residence, got into the car, and apparently carried back a white plastic grocery bag, which I think law enforcement surmised that there might have been drugs involved because Ms. Bollinger was the subject of an active drug investigation. So around that time, I think it was around 9.30, 9.45 when that incident occurred, at no time before 3 o'clock when all these events occurred, did they, number one, initiate surveillance of the house. Number two, actually go in and try to get a search warrant. There was at least four and a half hours. If they did in fact suspect that it was a drug transaction, they had more than sufficient time to go in and search the house. And number three, you know, once they got there, they didn't even do, for example, the typical investigation as to who was the occupant of the house or to develop any pictures, so to speak, as to who was the occupant and compare whether the person they actually saw coming out of the house was actually the resident of the house. So under these circumstances, Your Honors, the magistrate rightfully concluded that there were not sufficient exigent circumstances. And the district court adopted that? Yes, Your Honor. So that's really not an issue on this appeal, is it? I would agree. However, the government, in terms of our conditional plea agreement, reserved the right to argue whether or not the magistrate's decision was wrong in terms of whether or not there were exigent circumstances. We believe that there's not sufficient clear error here to overturn that. But the district court adopted that finding and then based its ultimate decision on the consent aspect. That's correct. And has the government appealed the district court's conclusions about the absence of exigent circumstances? I'm not sure if they did, to be quite honest, Your Honor. I'm not sure if I can assist the court on that point. And if they didn't, obviously, then they wouldn't have the ability to actually argue that point. Fair question. Well, moving now to the issue. I just may jump in. Sure. How much time elapsed between the agent's entry into Winston's property? How much time elapsed? Approximately between when they entered the property unlawfully and when Mr. Winston gave oral consent to search, approximately 15 minutes. Fifteen minutes. Yes, Your Honor. And turning to the issue of the consent, which we believe is the primary issue before the court today, we believe the magistrate erred for two specific reasons. First, that magistrate's conclusion on the facts that there was an intervening circumstance was not correct. And secondly, that the magistrate did not give sufficient consideration to the purposeful and flagrant prong and whether or not the conduct in question was the type for which the exclusionary clause was designed to deter. Now, Your Honors, the magistrate relies very heavily on the case of Greer. It's an Eighth Circuit 2010 case. And the magistrate found three specific intervening circumstances which it thought sufficiently removed the consent from the taint of the initial unlawful entry. Those were three. First, the fact that the mother had come to the residence and had informed or had advised the son to not cooperate with law enforcement. Number two, the fact that he had actually been given Miranda warnings and had actually signed the consent forms. And number three, the fact that his wife, Mrs. Wissington, was allowed to leave the residence sometime after the Miranda warnings were given. However, I think, first of all, the magistrate erred for one very, very important reason. In Greer, the key intervening circumstance that the court looked at there was the fact that the brother, after the initial unlawful entry was made, that the brother came to the residence and was talking with the defendant and advising him whether or not to conduct the search. In this case, that consent had already been manifested orally. And as a matter of fact, the mother did not come until after both the oral consent to search was given and the Miranda warnings were given. Moreover, the fact that the wife was allowed to leave the premises also occurred, number one, after the consent to search was given and I believe after the Miranda warnings were given. So I don't think that that is a sufficient basis for the magistrate to properly rely on Greer. In Greer, the court also noted the, I think, analyzed the purposeful and flagrant misconduct aspect, too, and they talked about specifically how the intrusion was not so egregious in that case. And here's why. In that case, in Greer, what had happened was law enforcement had approached the house of the defendant and the defendant opened the porch door and allowed them to come into this porch extension of his house. The front door was open and when law enforcement looked in the front door, they noticed that a fugitive was actually sitting in the couch in the living room. And so it was a fugitive for misdemeanor arrest warrants. And they also noticed the smell of burnt marijuana. So according to them, according to law enforcement, because based on those two, they asked for consent to search and they were denied and then they went in after the fugitive with the misdemeanor arrest warrants. In this case, the intrusion is completely different. In this case, they actually went up to law enforcement. They actually contacted the defendant's wife as she came out of the house and said, Is your husband home? Yes, he is. He's taking a shower. And so the wife went back in to the house and was going to retrieve him. At that point, law enforcement, you know, unbeknownst to why they wanted to do this, thought, Oh, goodness, maybe we should now go up and search the house. And so at that point, they knock again, you know, and this time they're ready to go in. They feel that, okay, this isn't going to work. And the wife opens the door, they have the guns drawn, and they burst in. Again, nothing, nothing to indicate that evidence was being destroyed, nothing to indicate that anyone was trying to flee, and no specific evidence that people were going to be injured or that the suspect was dangerous. And so from that, what happened is the defendant comes down in his bath towel because he just came out of the shower. He was directed to sit on the couch. And then for 15 minutes, law enforcement conducted, well, for two minutes at least, two of the first three minutes of the 15-minute time period, they conduct a protective sweep. Now, after they conduct the protective sweep, they find nothing, you know, and then they ask the defendant, Do you wish to consent to the search? He ponders it for a moment, and he says nothing. And then he asks to smoke a cigarette. He does that. After he smokes a cigarette, they ask him again. And then he says, and then the discussion turns on whether the house will be torn up if he doesn't consent to the search. He's told that they will get a warrant if they don't, if he doesn't consent. And he says that if he does consent to the search, that they won't tear up the place. And so he consented to the search. The problem is here, Your Honors, is that the initial unlawful entry, assuming the magistrate's decision is correct, there hasn't been sufficient time or any intervening circumstances to obviate the taint. Nothing at all. You know, it would be one thing if they had done the protective sweep and they had left the residence. And they all left and went back to their patrol cars, and then the law enforcement officer said, All right, well, we didn't find anything. I tell you what. What do you think? Would you wish to consent? But the fact that there are law enforcement officers in his house with weapons drawn, with him basically half naked sitting on a couch, is not the type of situation that we can anticipate that consent can be freely given. And even if it was, even crediting the fact that the consent was freely given and that he signed the consent form, there is no intervening circumstance which would warrant removing that taint, removing that initial taint, to obviate the consent from that taint. It's just not here. It's just not present in the cases that we typically see. In Greer, we do at least see the brother. But in this case, there's nothing like that. You know, the consent is given before he is given an opportunity to consult with his mother. And, Your Honors, I'd like to turn to the issue of whether or not, and I don't think the court really addressed this point, the whole notion of the purposeful and flagrant misconduct prong. As this court well knows, there are four prongs that the court looks at. The temporal proximity, whether there were intervening circumstances, whether Miranda warnings were given, and the last and most important that the Supreme Court noted, and Brown was the most important, was the purposeful and flagrantness of the officer's misconduct. In this case, Your Honors, let's be honest with ourselves. If it wasn't for the video, we wouldn't be here. And this issue would have proceeded as if the defendant had indeed consented. And that's the point of all this. Law enforcement changed their tune to fit the theory that they needed to make the consent valid. Is that the type of behavior that we want to promote? Isn't that the type of behavior that the Fourth Amendment is designed to deter? Like if they do believe that there's exigent circumstances, they need to note it in the report because that is the most important. That's the biggest reason why they can invade a house without a warrant. Your Honors, I see that my time is rapidly diminishing. I will reserve the remainder for my rebuttal. Thank you. Mr. Davis, you may proceed. Judge Shepard, Judge Wolman, Judge Byne, my name is John Davis. I represent the United States in this matter before the court today. I'd like to start with a recitation of the facts for several reasons. Maybe use my first two minutes in doing so. One, it's very fact sensitive. Two, to clear up any misconception of counsel's version of the facts, either orally and or in the briefs. And finally, to allow me during the argument to go back to the facts without having described the circumstances around it. In February of 2012, the Homeland Security agents are tipped by a confidential informant that there was a woman named Adrienne Bolliger staying at a Comfort Inn, a hotel in St. Charles, Missouri. The tip is that she has stayed there 14 times in the last 10 months and paid cash every time she's there. Based on the tip, agents identify her car in the parking lot and eventually follow her as she leaves and she is pulled over for a traffic stop. During that traffic stop, the agent that approaches the car discusses with her the reason for the stop. Eventually there is a search of the vehicle conducted and the agent finds a natural void underneath the dashboard of this Nissan Altima. And about $2,500 in cash is what Ms. Bolliger says it was that represents winnings from the casino. Later determined that the casino has no indication of her having gamed there the night before at all. Three weeks later, March of 2012, same tip. She's back at the same hotel and agents conduct surveillance of her vehicle and this time follow her to a residence in St. Louis City and observe her back into the driveway of what is later determined to be the residence of the defendant, Mr. and Mrs. Wissington. Inside the driveway, they observe her hunched over near the air... well, a male exits the residence and gets inside the car with her. It is Mr. Wissington and they collectively are hunched down underneath this dashboard where the agent had prior found this natural void in the car. That goes on for two or three minutes and then he gets out of the car and goes back inside. There are agents in the neighborhood watching this happen in different undercover vehicles. As she pulls away, they eventually fall in behind her so as to hopefully not be detected and when one of the agents drives by in a black SUV, he notices Mr. Wissington in the doorway of the house that has a solid glass storm door and he's standing behind that and the agent testifies that he makes eye contact with the vehicle and watches it drive by, alerting him to the fact that he has probably been made on surveillance and through his radio advises all the other agents of that. Eventually, Ms. Bollinger is pulled over away from the house and a search of her vehicle finds approximately $73,000 in the void of the vehicle. The agents return to the house some hours later and with the sole intention to simply conduct a knock and talk in the residence. How many hours later? I'm sorry, sir? You said some hours later. How many some hours later? I believe the exact number I don't know. I believe the original traffic stop was in the 9 o'clock hour and they approached the house in the 2 o'clock hour. When they approached the house, Mrs. Wissington is outside her vehicle in front of the house and they make contact with her, discuss what happened in the driveway earlier that day. They tell her that and they ask for consent to search the residence instead of the knock and talk and she says, I can't do that. You're going to have to talk to my husband. When he's inside and they ask, will you go get him? And she says, yes, I will. One of the agents and Mrs. Wissington walk across the front yard into the door and one of the agents actually holds that glass storm door open while Mrs. Wissington is bent over, fiddling with the lock to get in and when she gets inside, the agent's holding the door, she slams the door. And the agent is now standing outside and other agents convene in the front yard that were conducting surveillance and 47 seconds passes and the agents are standing at the door in the front yard and literally don't know what to do. One of the agents knocks on the door and shortly after knocking on the door, someone opens the door from inside, pulling the door into the house and the agents step in. Your Honor, I know all this because it's on a video that Appellant's Counsel has referenced. That video is part of the record and I can make it available to the court and I recommend that the court view the video in making this decision. As the agents step into the residence, two of them immediately do a protective sweep of the residence and in the record, one of them testifies that what they call this is the fatal funnel and they're scared for their safety and they do a protective sweep of the house as the defendant, Mr. Whisington, walks towards them in a towel. They retrieve his sweatpants and he gets dressed and they talk. They talk casually inside the foyer area of this house. And as they talk, the agents identify themselves, explain why they're there, and ask him for permission to search the house. He asks if he can smoke a cigarette inside his own house and they say, certainly you can. He smokes a cigarette and the entire time that it takes to smoke a cigarette, he is silently contemplating their request to search the house. Near the end of the cigarette, one of the agents asks again. And there is a discussion about getting a search warrant and if the house will be torn up, the agent assures him it won't, and he says, let's do this. When he says, let's do this, three pieces of paper are presented to him, receipts for what's going to be taken, the consent search of the house, and his Miranda rights, and he's advised of his Miranda rights prior to the search. Unlike some of the cases cited in the briefs, prior to the search, he is advised of his Miranda rights. The government contends that that is one of the intervening acts prior to the search. He signs the consent forms, and as a result of the search, agent sees slightly over $100,000 in drug paraphernalia and a small amount of marijuana. There are two issues in this case, Your Honor. The warrantless entry into the house and the voluntary consent to search the house and the subsequent confession that the defendant gave. As to the warrantless entry, Your Honor, do exigent circumstances exist that constitute the necessary basis for the warrantless entry? Now, why is that an issue on this appeal? This is a conditional guilty plea, Your Honor. As a condition of the plea, the defense was allowed, obviously, to appeal. That's why we're here today. The government reserved its right to raise the issue as to the magistrate's finding who found against the government as far as that exigency. Well, but the district court adopted that finding of lack of exigent circumstances, correct? That is correct. And the government did not appeal. The government did not appeal that. So why are we talking about the exigent circumstance finding? Well, we don't have to. Let's jump to the voluntary consent. But I would like to come to that. Well, I'm not trying to intimidate you into disregarding your argument. I'm just asking an honest question. Why? How can the government challenge the district court's finding there when the government has not appealed? Because it's part of that conditional guilty plea, that the defense is going to appeal the district court's adoption of the R&R as to the voluntary consent, and the government was reserving its right to argue the exigent circumstance. Well, but if you disagree with the district court, don't you have to file a notice of appeal? Yes, and there is no notice of appeal by the government in this case. The other question I have is this. There's a reference in the briefing of the appellant, and counsel alluded to it, that government officers change their story as to the entry into the house. And one of the factors, as I understand it, that we're to look at with respect to this consent issue is the conduct or the egregiousness of any government law enforcement conduct. And so that leads to this question. Do you agree that government law enforcement officers change their story as to the entry into the house after being presented with this surveillance video? No, I don't. In fact, counsel characterizes it as changing their tune or the court changing its story. There was no tune. There was no story. The case was presented to me for prosecution. I received the reports, and I reviewed it. And almost simultaneous to that, counsel called me and said, I have this videotape, I have provided discovery to him, I believe, and he had the videotape and he presented it to me. What it says in the report doesn't indicate anything about the flagrancy or the purposefulness of the law enforcement misconduct that the court is referring to here from the Brown case.  So it is an exigent circumstance. On the record is there a report from law enforcement here from an officer that was there in which he asserts that it was a consensual entry? Yes. And if that's the case, why doesn't that severely damage the credibility of law enforcement officers and the government's position with respect to this case? Because, respectfully, on the record during the motions hearing, that agent testified and explained the authorship of the report that the court is referring to. He explained that there were several officers, agents there. He wasn't there. He was physically on the property, but he wasn't in a line of sight to see the entry into the house. He later authored that report basically on secondhand knowledge. And negligently, perhaps, didn't check with other agents and said, hey, is this how this happened? Had he done that, I suspect that they would have said no. She didn't say come in. Or Mr. Wissington didn't say, hey, come on in. What happened was that there was an exigent circumstance. The agent who authored the report, I believe, was around the side of the house when that exact exigency occurred. I submit that that report does not rise to the level of flagrancy or purposefulness of law enforcement. The truth be told, if this court agrees with the magistrate court and says there's not an exigent circumstance, it's not destruction of evidence, it's not officer safety that allows the entry into the house, your honors, it's right next to it if it's not. Because factually what happened is the door is shut in their face, and what they know is what they've seen from the day before, what they know about Ms. Bollinger from three weeks before, and they suspect there is drugs in this house. Mrs. Wissington, by the way, is dressed in a jailer uniform, and there is potentially firearms in the house. So there is a safety concern and there is a destruction of evidence concern. As to this issue of voluntary consent, should the court agree with the magistrate court and the district court in finding there is no exigency in determining whether a person's consent purged the taint of the unlawful entry? The court is considered factors. The court is looking for an independent intervening act of free will sufficient to purge the taint of the unlawful entry. Counsel has recited what happened and concludes, well, those aren't intervening events. I say contrary, your honors. Giving of Miranda is looked for. It's not dispositive of the issue, but here Miranda was given before the search. The temporal proximity, the illegal entry, and the alleged consent. And here, Judge Bayou asked, it was approximately 15 minutes. But in that 15 minutes, there is a laundry list of intervening events that occurred. Can I smoke a cigarette and consider your request, officer? Absolutely. He smokes a cigarette, proceeds into the kitchen, and contemplates his decision. As he nears the end of the cigarette, he's asked again, and there is a casual discussion, so much so that it turns into banter between he and one of the agents, wherein he says to the agent, you know, if you decide to give up this law enforcement career, we can make a lot of money together. The wife is allowed to leave, presumably to go to work because she's in uniform, and actually comes back with the defendant's mother. At that point, the search is already occurring because the defendant has agreed at the end of his cigarette, I will consent to the search. And when the mother comes back, she is on the telephone with an attorney, and she wants to talk to her son. The agents allow her to talk to her son. And she says to her son, you shouldn't let them in here. You need to tell them to go. And he says, Mom, I know what I'm doing, and tells her to leave. Now, that in and of itself, because of time, is not an independent act of free will. But it sure is evidence of the fact that there was independent free will when he made that original decision to allow the search to happen. He tells his own mother to leave because I know what I'm doing. There's cordial, and all of this happens in a cordial setting. The demeanor is very polite. There is no revocation. Everybody's happy, and according to your view of it. That is the testimony on the record, that the demeanor was very polite and cordial. When I read these briefs, I said you couldn't make up these facts. But anyway, that's neither here. I mean, the wife being a probation officer. Well, anyway, go on. I see my time has expired, Your Honors. You may make a concluding statement. Your Honor, I ask that the court, if it does not consider that there are exigent circumstances that allow for the lawful entry, warrantless entry into the house, that the court affirm the magistrate court and the district court's finding that notwithstanding the unlawful entry, the taint of that entry was purged by the attenuating circumstances. Thank you. Very well. You may proceed, officer. Thank you, Your Honors. A few points of clarification in the brief time that I have left. Judge Shepherd, you requested whether there was actually a report issued in this case by law enforcement. It is, and there was. And it's attached to Appendix 825 through 827 of our brief. The magistrate noted in his findings, in fact, in conclusions of the law, that one of the reasons he didn't find exigent circumstances was because of the lack of documentation not only in the report, but the lack of sufficient facts in the record to demonstrate that. And as a matter of fact, even at the hearing, law enforcement noted the importance of mentioning those type of circumstances in its report. And that's because if they're going to invade a home, they need to be able to justify those circumstances. So whatever you want to call it, Judge, whether it's changing their tune or whatnot, it's clear that the report and what they relied on in the government's evidentiary hearing were completely different. And our humble submission was changing their tunes, so to speak. Secondly, I think there was a matter of issue of timing. The issue of timing between when the incident occurred, when they saw Ms. Bollinger, and when the unlawful entry occurred was approximately five hours, around 930-ish, and then 3 o'clock, 330-ish is when they entered the residence. And I'd like to point out, Your Honors, that Judge Shepard, I think you brought it up, the point is the issue of the purposefulness and flagrantness of this conduct. The issue here is the home is sacrosanct, and only in certain circumstances should that be invaded. And in this case, they tried to invade it by simply relying on consent and then changing their tune to agitate circumstances. Again, is this the type of conduct that we are designed here to promote? The exclusionary rule was designed specifically for cases such as this, specifically where if it wasn't for this video, none of this would ever have come to light. I ask the Court to consider that in its deliberation. Very well. The case is submitted, I should say. We'll take it under consideration, and the Court will be in recess, this panel, until 9 o'clock tomorrow.